ORIGINAL

CLERK OF DISTRICT COURT
NORTHERN DIST. OF TX
FORT WORTH DIVISION
FILED

2019 FEB 11 PM 12: 33

DEPUTY CLERK_____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| AMBULATORY SERVICES OF PUERTO RICO, LLC, on its behalf and derivatively on behalf of SNG NARANJITO, LLC, §§§§§ | |
| Plaintiffs, §§ | |
| v. § | |
| SANKAR NEPHROLOGY GROUP, LLC, PONNIAH SANKARAPANDIAN aka PONNIAH SANKAR, BALAMURUGAN P. SANKARAPANDIAN aka BALA SANKAR, BRANCH BANKING AND TRUST COMPANY, RENAL PHYSICIANS OF NORTH TEXAS, LC, and PPG HEALTH, P.A. §§§§§§§§§§§ | Civil Action No.: 4:18-cv-00916-A |
| Defendants. §§ | |

**PONNIAH SANKARAPANDIAN A/K/A PONNIAH SANKAR'S AND
BALAMURGUGAN P. SANKARAPANDIAN A/K/A BALA SANKAR'S
JOINT MOTION TO DISMISS AMENDED COMPLAINT AND BRIEF IN SUPPORT**

**Shayne D. Moses**
Texas State Bar No. 14578980
smoses@mph-law.com
**Timothy D. Howell**
Texas State Bar No. 24002315
thowell@mph-law.com

**MOSES, PALMER & HOWELL, L.L.P.**
309 W. 7th Street, Suite 815
Fort Worth, Texas 76102
Telephone: (817) 255-9100
Facsimile: (817) 255-9199

**ATTORNEYS FOR DEFENDANTS
PONNIAH SANKARAPANDIAN a/k/a
PONNIAH SANKAR and BALAMURGUGAN
P. SANKARAPANDIAN a/k/a BALA SANKAR**

# TABLE OF CONTENTS

**Page No.**

TABLE OF CONTENTS ................................................................................................ ii

TABLE OF AUTHORITIES ........................................................................................ iv

I.     PLAINTIFFS' FACTUAL ALLEGATIONS ................................................. 1

II.    APPLICABLE PLEADING STANDARD ...................................................... 4

III.   ARGUMENT & AUTHORITIES .................................................................... 5

    A.   Plaintiffs have failed to state a viable claim against the Sankars for
        breach of the Operating Agreement (Count II) ........................................... 5

    B.   Plaintiffs' breach of fiduciary duty claim does not withstand a
        Rule 12(b)(6) analysis (Count IV) ............................................................. 7

        1.   Plaintiffs have failed to state a breach of fiduciary duty claim
            based on the BB&T loan ................................................................. 7

        2.   Rivera lacks standing to assert a claim for breach of fiduciary
            duty ................................................................................................. 9

        3.   Alternatively, the breach of fiduciary duty claim is barred by the
            economic loss rule to the extent it is based on the BB&T loan ................. 9

        4.   Plaintiffs have failed to allege their fiduciary duty claim with
            specificity ...................................................................................... 10

    C.   ASPR has failed to state viable civil RICO claims (Counts VI-IX) ..................... 10

        1.   ASPR lacks standing to assert RICO claims because it has not
            adequately alleged the requisite injury or causation ................................. 10

        2.   ASPR has failed to adequately plead the elements of a RICO
            claim .............................................................................................. 13

            a.   ASPR has not pleaded a predicate act with specificity ................. 13

            b.   ASPR, as a non-bank entity, may not assert a RICO
                claim for fraud on a financial institution ....................................... 14

            c.   ASPR has not pleaded a pattern of racketeering
                 activity with specificity ................................................................. 15

3. ASPR has not alleged an underlying RICO claim to support its RICO conspiracy claim ........................................................................ 16

4. ASPR has not adequately alleged the Sankars conspired to violate civil RICO ................................................................................ 17

D. ASPR has failed to state a claim for fraud against P. Sankar (Count XI) ........................................................................................ 18

1. ASPR has failed to state with particularity any misrepresentation made by P. Sankar ........................................ 19

2. ASPR has failed to allege any detrimental reliance ................................. 19

3. ASPR's fraud claim is barred by the economic loss rule .......................... 20

E. ASPR has failed to adequately allege a civil conspiracy claim against the Sankars (Count XII) ........................................................................ 21

1. ASPR has failed to establish an underlying tort ...................................... 21

2. ASPR has alleged no facts to support the elements of civil conspiracy ........................................................................ 22

F. Plaintiffs' claims are barred by the applicable statute of limitations ...................................................................................... 23

G. ASPR failed to verify claims brought derivatively on behalf of Naranjito (Counts II & IV) ............................................................. 24

IV. CONCLUSION AND PRAYER ........................................................................ 25

CERTIFICATE OF SERVICE ................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page No.**

*Abraham v. Singh,*
    480 F.3d 351 (5th Cir. 2007) ........................................................................ 13

*Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,*
    483 U.S. 143 (1987).................................................................................... 24

*Anza v. Ideal Steel Supply Corp.,*
    547 U.S. 451 (1991).................................................................................... 12

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009)................................................................................. 4,18

*B Choice Ltd. v. Epicentre Dev. Assocs. LLC,*
    No. CV H-14-2096, 2016 WL 3911123 (S.D. Tex. May 12, 2016) ................................. 15

*Bernard Johnson, Inc. v. Continental Constructors, Inc.,*
    630 S.W.2d 365 (Tex. App.—Austin 1982, writ ref'd n.r.e.)............................................ 6

*Bressner v. Ambroziak,*
    379 F.3d 478 (7th Cir. 2004) ........................................................................ 15

*Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC,*
    566 B.R. 815 (Bankr. W.D. Tex. 2017).............................................................. 15

*Brown v. Bilek,*
    401 Fed. App'x 889 (5th Cir. 2010) .................................................................. 10

*Chaney v. Dreyfus Serv. Corp.,*
    595 F.3d 219 (5th Cir. 2010) ........................................................................ 17

*Clark v. PFPP Ltd. P'ship,*
    455 S.W.3d 283 (Tex. App.—Dallas 2015, no pet.)............................................. 9,20,21

*DDH Aviation, L.L.C. v. Holly,*
    No. 3:02-CV-25989-P, 2005 WL 770595 (N.D. Tex. Mar. 31, 2005) ............................ 25

*DeSantis v. Wackenhut Corp.,*
    793 S.W.2d 670 (Tex. 1990)......................................................................... 20

*Fimbel v. Fimbel Door Corp.,*
    No. 14-1915 (FLW)(DEA) 2014 WL 6992004 (D.N.J. Dec. 10, 2014)......................... 11

*First United Penecostal Church of Beaumont v. Parker,*
    514 S.W.3d 214 (Tex. 2017) ......................................................................... 22

*Grant Thornton, LLP v. Prospect High Income Funds,*
    314 S.W.3d 913 (Tex. 2010) ......................................................................... 22

*Guajardo v. Freddie Records, Inc.,*
    Civil Action No. H-10-2024, 2013 U.S. Dist. LEXIS 90630
    (S.D. Tex. April 9, 2013) ............................................................................... 6

*Hecht v. Commerce Clearing House, Inc.,*
    897 F.2d 21 (2d Cir. 1990) ........................................................................... 11

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.,*
    302 F.3d 552 (5th Cir. 2002) ..................................................................... 5,19

*H.J. Inc. v. Nw. Bell Tel. Co.,*
    492 U.S. 229 (1989) ...................................................................................... 16

*Holmes v. Sec. Investor Prof. Corp.,*
    503 U.S. 258 (1992) ...................................................................................... 11

*Johansen v. E.I. Du Pont de Nemours & Co.,*
    810 F.2d 1377 (5th Cir. 1987) ...................................................................... 23

*Jones v. Alcoa, Inc.,*
    339 F.3d 359 (5th Cir. 2003) ........................................................................ 23

*Jones v. Bock,*
    549 U.S. 199 (2007) ........................................................................................ 5

*In re Life Partners Holdings, Inc.,*
    No. 4:17-CV-112-A, 2017 WL 5599485 (N.D. Tex. Nov. 17, 2017) .............. 5

*Loughrin v. United States,*
    573 U.S. 351 (2014) ...................................................................................... 14

*Marriott Bros. v. Gage,*
    704 F. Supp. 731 (N.D. Tex. 1988), *aff'd* 911 F.2d 1105 (5th Cir. 199) .......... 14

*Miles v. Plumbing Services of Houston, Inc.,*
    668 S.W.2d 509 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.) ...... 6

*Moore v. Allstate Tex. Lloyds,*
   No. 4:17-CV-287-A, 2017 WL 2963473 (N.D. Tex. July 11, 2017)........................... 10,19

*Neese v. Lyon,*
   479 S.W.3d 368 (Tex. App.—Dallas 2015, no pet.).......................................................... 7

*Nelson v. Nelson,*
   No. CIV 14-4854, 2015 WL 4136339, at *7 (D. Minn. July 8, 2015),
   *aff'd,* 833 F.3d 965 (8th Cir. 2016)...................................................................... 15

*Nolen v. Nucentrix Broadband Networks, Inc.,*
   293 F.3d 926 (5th Cir. 2002) ...................................................................... 17

*Patterson v. Mobil Oil Corp.,*
   335 F.3d 476 (5th Cir. 2003) ...................................................................... 11

*Price v. Pinnacle Brands,*
   138 F.3d 602 (5th Cir. 1998) ...................................................................... 10,11

*R2 Invs. LDC v. Phillips,*
   401 F.3d 638 (5th Cir. 2005) ...................................................................... 4

*Siddiqui v. Fancy Bites, LLC,*
   504 S.W.3d 349 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ............................. 9

*Smith Int'l, Inc. v. Egle Grp., LLC,*
   490 F.3d 380 (5th Cir. 2007) ...................................................................... 6

*Sonnier v. State Farm Mut. Auto. Ins. Co.,*
   509 F.3d 673 (5th Cir. 2007) ...................................................................... 4

*Stevenson v. Koutzaroz,*
   795 S.W.2d 313 (Tex. App.—Houston [1st Dist.] 1990, writ denied) ............................. 24

*St. Germain v. Howard,*
   556 F.3d 2 61 (5th Cir. 2009) (per curiam)........................................................ 13,15

*Stine v. Stewart,*
   80 S.W.3d 586 (Tex. 2002)......................................................................... 24

*S.V. v. R.V.,*
   933 S.W.2d 1 (Tex. 1996).......................................................................... 23

*In re Taxable Mun. Bond Sec. Litig.,*
   51 F.3d 518 (5th Cir. 1995) ...................................................................... 11,12

*Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.,*
   975 F.2d 1134 (5th Cir. 1992) .............................................................. 5,13,14,16

*Tilton v. Marshall,*
   925 S.W.2d 672 (Tex. 1996) ........................................................................... 22

*Triplex Commc'ns. Inc. v. Riley,*
   900 S.W.2d 716 (Tex. 1995) ........................................................................... 22

*Tuchman v. DSC Commc'ns Corp.,*
   14 F.3d 1061 (5th Cir. 1994) .......................................................................... 18

*United States v. Sharpe,*
   193 F.3d 852 (5th Cir. 1999) .......................................................................... 17

*Vanderbilt Mortg. & Fin., Inc. v. Flores,*
   735 F. Supp. 2d 679 (S.D. Tex. 2010) ....................................................... 13,15

*Van Velzer v. Amegy Bank*, 713 Fed. App'x 377 (5th Cir. 2018) (per curiam) ........................... 14

*Villarreal v. Wells Fargo Brokerage Services, LLC,*
   315 S.W.3d 109 (Tex. App.—Houston [1st Dist.] 2010, no pet.) ..................................... 24

*Wackman v. Rubsamen,*
   602 F3d 391 (5th Cir. 2010) ........................................................................... 22

*Williams v. Khalaf,*
   802 S.W.2d 651 (Tex. 1990) ........................................................................... 24

*Williams v. WMX Techs, Inc.,*
   112 F.3d 175 (5th Cir. 1997) ........................................................................ 5,18

## Statutes and Rules

18 U.S.C. § 1344 ................................................................................................................. 14

Fed. R. Civ. P. 9(b) ........................................................................................................... 5

Fed. R. Civ. P. 23.1 ........................................................................................................... 24

Tex. Civ. Prac. & Rem. Code § 16.004(a)(5) .......................................................... 24

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendants Ponniah Sankarpandian a/k/a Ponniah Sankar ("P. Sankar") and Balamurgugan P. Sankarapandian a/k/a Bala Sankar ("B. Sankar") (jointly "the Sankars") move the court to dismiss the claims asserted against them by plaintiffs Ambulatory Services of Puerto Rico, LLC ("ASPR"), individually and derivatively on behalf of SNG Naranjito, LLC ("Naranjito"), and Carlos R. Rivera ("Rivera") (collectively "Plaintiffs") for failure to state a claim upon which relief can be granted.

## I.    PLAINTIFFS' FACTUAL ALLEGATIONS

1.    In May 2012, Rivera founded a dialysis clinic in Naranjito, Puerto Rico called Centro de Dialisis San Miguel Arcangel, LLC ("San Miguel").[1]  In 2013, Rivera sought to duplicate his actions by opening another clinic in the city of San Juan.[2]  To generate the funds needed to start a second clinic, Rivera sought out investment partners for San Miguel.  He eventually reached an agreement with Sankar Nephrology Group, LLC ("SNG"), a Fort Worth company that owned several dialysis centers in Texas, Louisiana, and Oklahoma, under which SNG would purchase a 60% interest in San Miguel.[3]

2.    On August 1, 2014, SNG, Rivera and San Miguel executed an agreement whereby Rivera sold 60% of San Miguel's business assets to SNG for $3.72 million.[4]  Rivera retained the remaining 40% interest in San Miguel, which he subsequently transferred to ASPR, an entity he owned and controlled.[5]  ASPR and SNG at the same time executed an agreement contributing their respective undivided interests in the business assets to a newly formed entity, Naranjito.[6]

---

[1] Plaintiffs' Amended Complaint, ¶ 22.
[2] *Id.* at ¶ 24.
[3] *Id.* at ¶¶ 24 - 27.  P. Sankar founded SNG and, along with his son, B. Sankar, is a physician involved with providing health care services and securing treatments for their patients at SNG.
[4] Based on simple math, this means 100% of the company's assets were valued at $6.2 million.
[5] *Id.* at ¶ 30 and App. Ex. 2.
[6] *Id.* at ¶ 31 and App. Ex. 3.

Naranjito then hired Renal Physicians of North Texas, LC ("Renal Physicians") to serve as Naranjito's business and administrative manager beginning August 1, 2014.[7]

3.      To obtain the funds necessary to buy into Naranjito, SNG obtained a loan from Branch Banking and Trust Company ("BB&T").[8]  The loan was secured by, among other things, a lien in favor of BB&T on Naranjito's personal property.[9]  Rivera signed a certificate authorizing and relating to the BB&T loan.[10]  This loan is the genesis of Plaintiffs' claims against the Sankars.

4.      During 2015, disputes arose between Rivera and the Sankars concerning the management of Naranjito.  By the end of 2015, Rivera had begun courting buyers to purchase the company, and secured a $7 million offer from Bio-Medical Applications of Puerto Rico, Inc. ("Bio-Medical").[11]  Bio-Medical agreed to purchase substantially all of Naranjito's assets for that price, the proceeds of which were to be allocated to SNG and ASPR in proportion to each entity's ownership interest—$4.2 million (60%) to SNG and $2.8 million (40%) to ASPR.[12]

5.      In connection with the sale, SNG disclosed the BB&T loan to Bio-Medical and presented it with a loan payoff letter detailing the then-existing balance and the lien against Naranjito's assets.[13]  Notwithstanding the existence of the loan and lien, the sale closed on December 31, 2016, for the full purchase price of $7 million.[14]  After the sale closed, Bio-

---

[7] *Id.* at ¶ 37 and App. Ex. 5.

[8] *Id.* at ¶¶ 43(a) & 52.

[9] *Id.* at ¶ 53. Plaintiffs allege "SNG never invested capital of its own in the joint venture" (*id.* at ¶ 40), implying that Rivera did not receive the consideration that he was to receive under the asset purchase agreement. This suggestion is untrue and not supported by the Amended Complaint. The entirety of the loan proceeds went to Rivera resulting in his receipt of the full purchase price. *Id.* at ¶ 61. Thus, he was never damaged or harmed by the BB&T loan.

[10] *Id.* at ¶¶ 56-57. Although now contested by Plaintiffs, the certificate did, in fact, authorize the BB&T loan.

[11] *Id.* at ¶¶ 99-100.  Plaintiffs contend that the Sankars decreased the value of Naranjito; however, the sale to Bio-Medical establishes that the value of the entity increased by over 12% from $6.2 million in August 2014 to $7 million in February 2016.

[12] *Id.* at ¶¶ 101. This allocation was to be made *following* reconciliation of Naranjito's accounts upon dissolution of the company. *See id.* at App. Ex. 4, ¶ 11.5 (Operating Agreement).  The BDO accounting, about which there remains disputes, was the first step toward this reconciliation.

[13] *Id.* at ¶ 107.

[14] *Id.* at ¶ 130.

Medical processed two wire transfers. Approximately $2.7 million was wired to an account in the name of SNG and Naranjito and promptly used to pay off the BB&T loan and extinguish the lien.[15] The remaining $4.28 million – which obviously exceeds the amount ASPR claims it is owed from the sale proceeds – was wired to an account in Naranjito's name, where (by agreement of the parties) disputed funds are being held in escrow pending the outcome of this litigation.[16]

6.      There is no allegation that the BB&T loan was ever in default or that the lien on the assets of Naranjito was executed upon before being fully repaid. There is also no allegation that Rivera did not receive full payment for his 60% interest in San Miguel in August 2014 as a result of the funding of the BB&T loan. To the contrary, the Amended Complaint and its exhibits make clear that he did.

7.      After accounting disputes arose between the parties, they agreed to have an outside accounting firm, BDO USA LLC ("BDO"), perform a forensic analysis of Naranjito's operations.[17] On January 9, 2018, BDO issued a report.[18] Thus, there has been a recent accounting.

8.      On November 12, 2018, Plaintiffs filed this suit. They amended their complaint on February 1, 2019. In their Amended Complaint, Plaintiffs assert the following claims against the Sankars:

---

[15] *Id.* at ¶ 131

[16] *Id.* at ¶ 131 and App. Ex. 1 (App. 004) (diagram referencing funds placed in escrow). In May 2017, after disputes arose between ASPR and SNG related to the reconciliation of Naranjito's finances, the parties jointly agreed to distribute to ASPR $1.4 million of the approximately $4.3 million in sales proceeds which Bio-Medical had wired to the bank account in Naranjito's name. The remaining approximately $2.7 million is—by agreement of the parties— being held in escrow pending the resolution of the outstanding disputes between the parties and the outcome of this litigation. At no time has any defendant contended ASPR is obligated to pay any portion of the BB&T loan. That obligation was fulfilled entirely out of SNG"s portion of the sales proceeds.

[17] *Id.* at ¶ 163.

[18] *Id.* BDO issued a supplemental report on February 16, 2018. Plaintiffs' only refer to select portions of the BDO report that they deem favorable to them.

- Count II: Breach of contract based on the SNG Naranjito, L.L.C. Operating Agreement (by ASPR and Naranjito against both of the Sankars);

- Count IV: Breach of fiduciary duty (by all Plaintiffs against both of the Sankars);

- Counts VI-IX: Various civil RICO claims (by ASPR against P. Sankar) and conspiracy to violate RICO (by ASPR against both of the Sankars);

- Count XI: Fraud (by ASPR against P. Sankar); and

- Count XII: Civil conspiracy (by ASPR against both of the Sankars).

9.     As shown below, all of the claims brought against the Sankars should be dismissed for failure to state a claim. These claims, and the reasons supporting their dismissal, are addressed in seriatim, with the exception of arguments based on the statutes of limitations (applicable to all claims) and ASPR's failure to verify the derivative claims brought on behalf of Naranjito (applicable to Counts II and IV), which are addressed at the end of this brief.

## II.     APPLICABLE PLEADING STANDARD

10.     In reviewing a motion to dismiss brought pursuant to Rule 12(b)(6), a court must accept as true all well-pleaded facts in the complaint, viewing them in the light most favorable to the pleader.[19]  However, conclusory allegations, unwarranted deductions of fact, and legal conclusions shall not be accepted.[20]  A pleader who does not plead *facts* showing a plausible right to relief, but just *mere allegations* of wrongdoing or unlawful conduct, is not entitled to relief.[21]  Stated differently, a complaint must move beyond "'naked assertion[s]' devoid of 'further factual enhancement'" and contain sufficient factual grounds to "state a claim to relief that is plausible on its face."[22]  Similarly, if a complaint "show[s] that [the] requested relief is

---

[19] *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007).
[20] *R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005).
[21] *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).
[22] *Id.* at 678 (citations omitted).

barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim."[23]

11.     Rule 9(b) imposes a heightened pleading standard for claims based on allegations of fraud or mistake.[24]  This includes claims "where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud,"[25] and claims that a defendant has violated the civil RICO statute by engaging in predicate acts involving fraudulent activity.[26]  To survive a motion to dismiss on any claim subject to this heightened standard, a party must specifically plead "the statements contended to be fraudulent, [the identity of] the speaker, . . . when and where the statements were made, and . . . why the statements were fraudulent."[27] "A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail."[28]

## III. ARGUMENT & AUTHORITIES

A.     **Plaintiffs have failed to state a viable claim against the Sankars for breach of the Operating Agreement (Count II)**

12.     Plaintiffs contend the Sankars breached Naranjito's Limited Liability Company Operating Agreement ("Operating Agreement").[29]  On its face, the Operating Agreement was "made and entered into ... by and between ...[SNG] and [ASPR]" in their respective capacities as members of Naranjito.[30]  In the Amended Complaint, Plaintiffs identify the Operating Agreement as an agreement that "*ASPR and SNG* executed" in connection with the sale of San

---

[23] *Jones v. Bock*, 549 U.S. 199, 215 (2007).
[24] FED. R. CIV. P. 9(b).
[25] *In re Life Partners Holdings, Inc.*, No. 4:17-CV-112-A, 2017 WL 5599485, at *4-5 (N.D. Tex. Nov. 17, 2017).
[26] *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).
[27] *Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002).
[28] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997).
[29] Plaintiffs' Amended Complaint, at App. Ex. 4 (App. 042-089).
[30] *Id.* at App. Ex. 4 (App. 042).

Miguel's assets.[31] The existence of a valid contract between the parties is the predicate element of a breach of contract claim.[32] Here, Plaintiffs' claim for breach of the Operating Agreement fails to allege the existence of a valid contract to which either of the Sankars is a party or signatory. To the contrary, as noted above, Plaintiffs' allegations are that *SNG* (not either of the Sankars individually) entered into the Operating Agreement with ASPR.

13.      Although P. Sankar signed the Operating Agreement, he did so in his capacity as Manager of SNG.[33] The claims against B. Sankar are even more frivolous, as there is no allegation he signed the Operating Agreement in any capacity, and a review of the agreement (Exhibit 4 to the Amended Complaint) confirms he did not sign it. The well-established general rule is that "a suit for breach of contract may not be maintained against a person who is not a party to the contract, particularly a non-party who is assigned duties by the terms of the contract."[34] When a plaintiff seeks to hold a *non-signatory* like P. Sankar or B. Sankar liable for *breach of contract*, the plaintiff "has the burden to prove that the defendant has obligated himself under the contract."[35] In *Guajardo v. Freddie Records, Inc.,*[36] a federal district court in the Southern District of Texas dismissed breach of contract actions asserted by several plaintiffs because there were no plausible allegations the defendants were parties to the contract in question. As was the case in *Guajardo,* here there are no factual allegations that would support a breach of contract claim against the Sankars. Accordingly, dismissal is proper.

---

[31] Plaintiffs' Amended Complaint, ¶¶ 31, 46 (emphasis added).

[32] *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

[33] *Id.* at App. Ex. 4, (App. 083).

[34] *Bernard Johnson, Inc. v. Continental Constructors, Inc.,* 630 S.W.2d 365, 369 (Tex. App.—Austin 1982, writ ref'd n.r.e.).

[35] *Miles v. Plumbing Services of Houston, Inc.,* 668 S.W.2d 509, 512 (Tex. App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.).

[36] Civil Action No. H-10-2024, 2013 U.S. Dist. LEXIS 90630, at *83-*90, *107-*108 (S.D. Tex. April 9, 2013).

**B.      Plaintiffs' breach of a fiduciary duty claim does not withstand a Rule 12(b)(6) analysis (Count IV)**

14.      Next, all three Plaintiffs assert a claim against the Sankars (and SNG) for breach of fiduciary duty.  Specifically, Plaintiffs allege the Sankars breached fiduciary duties owed to Plaintiffs by engaging in "self-dealing using Naranjito's assets and profits for personal gain" and by acting "in bad faith and with disloyalty" when they and SNG obtained the BB&T loan with knowledge Naranjito's assets would be encumbered as a result thereof, and later when they had Bio-Medical wire a portion of the purchase monies for its acquisition of Naranjito to an account that was used to pay off the BB&T loan.[37]  Secondarily, Plaintiffs vaguely allege the Sankars failed to disclose Naranjito's financial position, commingled assets and diverted monies from Naranjito for their own benefit. These claims should be dismissed for the following reasons.

**1.      Plaintiffs have failed to state a breach of fiduciary duty claim based on the BB&T loan**

15.      To state a claim for breach of fiduciary duty, a party must allege "(1) a fiduciary relationship existed between the [parties]; (2) the defendant breached its fiduciary duty to the plaintiff; and (3) the defendant's breach resulted in injury to the plaintiff or benefit to the defendant."[38]  Plaintiffs have failed to establish the second and third elements of their claim.

16.      To the extent Plaintiffs' breach of fiduciary duty claim is based on the Sankars' involvement in obtaining the BB&T loan, or their alleged instruction to use of a portion of SNG's share of the Naranjito sale proceeds to pay off the loan, such claim facially lacks merit and should be dismissed.  Plaintiffs have not clearly articulated, and only in a conclusory fashion allege, how the BB&T loan resulted in a breach of any duty the Sankars personally owed to

---

[37] Plaintiffs' Amended Complaint, ¶¶ 189-190.
[38] *Neese v. Lyon*, 479 S.W.3d 368, 386 (Tex. App.—Dallas 2015, no pet.).

Plaintiffs.[39] To the contrary, Plaintiffs allege that the Sankars (through SNG) engaged in conduct that was expressly authorized by the certification signed by Rivera.[40] This cannot support a breach of fiduciary duty claim.

17. Plaintiffs also fail to allege facts showing the Sankars enjoyed a benefit or injured Plaintiffs by obtaining and later paying off the BB&T loan. Instead, Plaintiffs allege that the Sankars (again, via SNG) obtained the loan from BB&T in order to facilitate SNG's buying in to the joint venture which would become Naranjito and, in doing so, caused Naranjito's assets to become encumbered by a lien.[41] However, for the entire duration of Naranjito's existence, neither ASPR, Naranjito, nor Rivera suffered any tangible injury as a result of the BB&T loan or lien, and none has been alleged. Similarly, Plaintiffs do not allege that the loan or lien in any way affected the sale of Naranjito. In fact, Plaintiffs admit ASPR secured a $7 million offer on the assets of Naranjito from Bio-Medical; that even after learning of the loan, Bio-Medical closed on the sale for the full amount; and that after the sale of Naranjito, the BB&T loan was paid in its entirety and the lien extinguished.[42] These facts do not support, but instead refute, any claim of an injury based on the BB&T loan or lien. Moreover, ASPR's contention that use of part of the Naranjito sale proceeds to pay off the BB&T loan—which facilitated or enabled the sale of Naranjito's assets to Bio-Medical—somehow exemplifies a breach of fiduciary duty is misguided. As explained elsewhere in this motion, Plaintiffs allege $4.2 million of the sale proceeds remain undistributed and in an account *in Naranjito's name* pending the outcome of this litigation.[43] This allegation refutes any contention the Sankars' misappropriated or diverted the funds to their personal benefit or that Plaintiffs have been harmed.

---

[39] Plaintiffs' Amended Complaint, ¶ 189.

[40] *Id.* at ¶¶ 56-57.

[41] *Id.* at ¶¶ 43 & 52.

[42] *Id.* at ¶¶ 99-101, 104, 106-07, & 130-31.

[43] *Id.* at ¶ 131 and App. Ex. 1, (App. 004); *see supra* note 16.

### 2.      Rivera lacks standing to assert a claim for breach of fiduciary duty

18.      Additionally, Rivera's breach of fiduciary duty claim should be dismissed because the Sankars did not owe a fiduciary duty to Rivera personally.[44]  This is so because it was ASPR, not Rivera, who was a member of Naranjito.  Stated differently, Rivera was one step removed.  Any fiduciary duty he possibly enjoyed was only derivative based on his role as the member/owner of ASPR.  Likewise, any injury Rivera conceivably incurred as a result of any of the alleged breaches could only have been experienced indirectly via his ownership of ASPR.  Thus, Rivera does not have standing to personally assert a fiduciary duty claim.

### 3.      Alternatively, the breach of fiduciary duty claim is barred by the economic loss rule to the extent it is based on the BB&T loan

19.      Alternatively, if the Court declines to dismiss Plaintiffs' breach of contract claim against the Sankars or finds that such a claim can validly be premised on the Operating Agreement, then the breach of fiduciary duty claim is barred (at least in part) by the economic loss rule.  The economic loss rule "generally precludes recovery in tort for economic losses resulting from the failure of a party to perform under a contract."[45]  In essence, the rule focuses on the substance of the cause of action and precludes the repackaging of contract claims and contract-based economic damages as tort claims and damages.[46]  When an alleged injury is only the economic loss incurred in connection with a valid contract between the parties, the action sounds in contract alone—not in tort.[47]  To the extent Plaintiffs seek recovery of damages related to the BB&T loan under their breach of fiduciary duty claim, the claim is nothing more than a repackaged claim for alleged breaches of the contracts made the basis of Counts I, II and III of

---

[44] *See Siddiqui v. Fancy Bites, LLC*, 504 S.W.3d 349, 360-61 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (LLC member lacked standing to assert fiduciary duty cause of action belonging to LLC).
[45] *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 12 (Tex. 2007).
[46] *Clark v. PFPP Ltd. P'ship*, 455 S.W.3d 283, 288 (Tex. App.—Dallas 2015, no pet.).
[47] *Id.*

the Amended Complaint. As such, the economic loss rule is implicated and warrants at least a partial dismissal of the breach of fiduciary duty claim.

### 4. Plaintiffs have failed to allege their fiduciary duty claim with specificity

20. When a breach of fiduciary duty claim is predicated on alleged fraudulent activity, such claim is subject to the heightened Rule 9 pleading standard.[48] Here, Plaintiffs' breach of fiduciary duty claim is predicated on activity they allege was fraudulent.[49] Accordingly, Plaintiffs were required to allege "the who, what, when, where, and how" of the events constituting the purported fraud.[50] Because they have not adequately laid out each of these components, they have not stated their breach of fiduciary claims with the level of specificity required by Rule 9.

### C. ASPR has failed to state viable civil RICO claims (Counts VI-IX)

21. ASPR asserts four private causes of action against P. Sankar and one cause of action against B. Sankar arising under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68 ("RICO").[51] All of ASPR's civil RICO claims should be dismissed for the reasons discussed below.

### 1. ASPR lacks standing to assert RICO claims because it has not adequately alleged the requisite injury or causation

22. As an initial matter, ASPR lacks standing to assert any RICO claim. Standing to bring a civil RICO claim is established by satisfying two elements: injury and causation.[52] To establish injury, a plaintiff must allege a "concrete financial loss"—mere speculative damages or

---

[48] *Brown v. Bilek*, 401 Fed. App'x 889, 893 (5th Cir. 2010)

[49] *Compare* Plaintiffs' Amended Complaint, ¶¶ 189-91 (Count IV – Breach of Fiduciary Duty), *with* ¶¶ 259-63 & 266-67 (Count XI – Fraud).

[50] *Moore v. Allstate Tex. Lloyds*, No. 4:17-CV-287-A, 2017 WL 2963473, at *2 (N.D. Tex. July 11, 2017) (quoting *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

[51] Specifically, ASPR alleges P. Sankar violated RICO Sections 1962(a) (Count VI), 1962(b) (Count VII) and 1962(c) (Count VIII). ASPR asserts a cause of action against both of the Sankars under Section 1962(d) (Count IX) alleging they conspired with the other defendants to commit civil RICO violations.

[52] *Price v. Pinnacle Brands*, 138 F.3d 602, 606 (5th Cir. 1998).

a claim that a defendant's actions resulted in a lost opportunity to plaintiff cannot support a RICO claim.[53]   To establish the causation requirement, a plaintiff must allege that a RICO predicate offense was the but-for and proximate cause of its financial injuries.[54]   A party who cannot or does not allege these elements lacks standing to bring a civil RICO claim.[55]

23.     The injury ASPR alleges it suffered is that, supposedly unbeknownst to it, SNG and P. Sankar caused Naranjito's assets  to become encumbered as a result of the BB&T loan, security agreement, and guarantees, and in a conclusory way, that this caused ASPR to experience loss of profits, loss of distributions, and diminution of its equity interest in Naranjito.[56] These kinds of purported injuries are insufficient to support a RICO claim.[57]

24.     In fact, ASPR has failed to show it was injured at all, much less that it suffered a concrete injury of the type required to confer RICO standing. By ASPR's own admission, it was able to secure a purchaser to buy Naranjito for $7 million. This sale, which ASPR expressly authorized and approved,[58] negates any claim of a diminishment in value of ASPR's equity interests.  Although ASPR claims it was damaged by Naranjito's assets being encumbered, it does not identify how or to what extent the encumbrance caused it any concrete injury or out-of-pocket loss.   It merely claims injuries in the abstract in the form of alleged lost profits, distributions and diminished equity in Naranjito.[59]  As discussed above, these types of alleged injuries are more appropriately classified as abstract injuries to an intangible property interest,

---

[53] *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 492 n. 16 (5th Cir. 2003).

[54] *Holmes v. Sec. Investor Prof. Corp.*, 503 U.S. 258, 268 (1992).

[55] *See Price*, 138 F.3d at 606.

[56] Plaintiffs' Amended Complaint, ¶¶ 206, 212, 220, 226, 234, 240.

[57] *See e.g., In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d 518, 523 (5th Cir. 1995) (lost opportunity to obtain a loan too speculative to constitute an injury); *see also Hecht v. Commerce Clearing House, Inc.*, 897 F.2d 21, 24 (2d Cir. 1990) (injury in the form of lost potential business commissions is too speculative to confer standing); *Fimbel v. Fimbel Door Corp.*, No. 14-1915 (FLW)(DEA), 2014 WL 6992004, at *7 (D.N.J. Dec. 10, 2014) (failure to receive distribution of corporate profits, diminution of business value, and reduced profit payouts all too speculative to constitute tangible property interest or confer standing).

[58] Plaintiffs' Amended Complaint, at App. Ex. 8 (App. 115).

[59] *Id.* at ¶¶ 212, 226, 240.

and any calculation of such damages, to the extent they can be considered such, would "require[]

extensive speculation and would not simply entail a calculation of present, actual damages."[60]

In short, ASPR's claimed injuries are not a "concrete financial loss, an actual loss of [ASPR's]

own money, [but] merely injury to a valuable intangible property right." *Id.*[61] Because such an

"injury" cannot confer RICO standing, ASPR's RICO claims should be dismissed.[62]

25.     Assuming arguendo that ASPR pleaded a viable RICO injury, the RICO claims

nonetheless should be dismissed because ASPR has failed to allege facts showing that the

predicate acts allegedly engaged in by P. Sankar (or any other defendant, for that matter) were

the proximate and but-for cause of that injury.  "When a court evaluates a RICO claim for

proximate causation, the central question it must ask is whether the alleged violation led directly

to the plaintiff's injuries."[63]  With respect to all three counts of ASPR's civil RICO claims, the

predicate acts it vaguely alleges P. Sankar engaged in were: "(a) multiple acts of wire fraud, 18

U.S.C. § 1343 (wire of loan proceeds, insurance deposits and asset sale proceeds); (b) multiple

acts of fraud upon a financial institution, 18 U.S.C. § 1344; [and] (c) multiple acts of mail fraud,

18 U.S.C. § 1341 by the transmission of mail between and among SNG, Renal Physicians, PPG,

ASPR, and BB&T."[64]  With respect to the alleged violations of RICO Sections 1962(b) and

1962(c), ASPR expands ever so slightly on the second aspect of these boilerplate allegations,

claiming "multiple acts of fraud upon a financial institution, 18 U.S.C. § 1344, *by obtaining

monies from BB&T through false pretenses.*"[65]  Subsumed within these general allegations it

appears ASPR is contending P. Sankar indirectly committed a RICO violation by allowing the

---

[60] *In re Taxable Mun. Bond Sec. Litig.*, 51 F.3d at 523.

[61] *Id.*

[62] Again, the Sankars deny that Plaintiffs were damaged at all, as Rivera received the loan proceeds and all loan payments were timely made such that the collateral was unaffected by the loan.

[63] *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (1991).

[64] Plaintiffs' Amended Complaint, ¶¶ 209, 223, 237. P. Sankar's alleged role in any of these acts is not specified.

[65] *Id.* at ¶¶ 223, 237 (emphasis added).

use of mails and wires to transmit loan payments to repay the BB&T loan.[66]   But ASPR has

failed to plead facts establishing how its claimed injuries – lost profits, lost distributions, and loss

in equity interest – flow directly from these alleged acts of P. Sankar.[67]

### 2.   ASPR has failed to adequately plead the elements of a RICO claim

26.    Even if ASPR had standing to assert a claim under RICO, which it does not, the

RICO claims should be dismissed for failure to adequately state a claim against P. Sankar.

Claims under RICO have three common elements: "(1) a person who engages in (2) a pattern of

racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an

enterprise."[68]   "A pattern of racketeering activity consists of two or more predicate criminal acts

that are (1) related and (2) amount to or pose a threat of continued criminal activity."[69]   In the

present case, ASPR has failed to adequately allege its asserted predicate acts or a pattern of

racketeering activity.

### a.    ASPR has not pleaded a predicate act with specificity

27.    The predicate acts of racketeering activity alleged by ASPR are mail fraud, wire

fraud, and fraud on a financial institution.[70]

28.    RICO claims based on the predicate acts of fraud are subject to the heightened

Rule 9(b) pleading standard.[71]   Thus, to avoid dismissal, Rule 9 requires ASPR to provide "some

factual basis for conclusory allegations of intent, which must, in turn give rise to a strong

---

[66] Plaintiffs allegations against P. Sankar are so vague it is difficult to determine what he is actually accused of doing with respect to the claims of wire fraud, fraud on a financial institution or mail fraud.  Regardless, to the extent Plaintiffs allege P. Sankar committed fraud on a financial institution by sending "fraudulent" loan documents through the mails to BB&T or by wiring loan proceeds, ASPR, as a non-bank entity, is not entitled to bring such a claim. *See Vanderbilt Mortg. & Fin., Inc. v. Flores*, 735 F. Supp. 2d 679, 696-97 (S.D. Tex. 2010).

[67] In fact, the predicate acts alleged by ASPR involve instances of P. Sankar acting on behalf of or through SNG.

[68] *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007).

[69] *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (per curiam).

[70] Plaintiffs' Amended Complaint, ¶¶ 154, 157-58, 209, 223, 237.

[71] *See Tel-Phonic Servs.*, 975 F.2d at 1139.

inference of fraudulent intent."[72]  Rule 9 further requires ASPR to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent."[73]  Here, ASPR has failed to provide the required details about P. Sankar's alleged fraudulent statements or acts.

29.     All of ASPR's allegations regarding mail, wire and bank fraud, which only claim in a conclusory way that P. Sankar's actions were undertaken fraudulently, fail to meet Rule 9's heightened pleading threshold.  Not a single instance of a purported act of mail, wire or bank fraud committed by P. Sankar is pleaded with Rule 9's required specificity because at no point does ASPR allege the exact dates of the fraudulent communications, the identity of the senders and receivers, the specific content of the communications, or provide an explanation as to why such content is fraudulent.[74]  Absent these specific factual allegations, ASPR's RICO claims premised on mail, wire and bank fraud should be dismissed.

> b.      *ASPR, as a non-bank entity, may not assert a RICO claim for fraud on a financial institution*

30.     To establish a valid RICO claim based on fraud on a financial institution, which is the other predicate act ASPR alleges in boilerplate fashion, a plaintiff must plead facts showing the defendant "knowingly execute[d], or attempt[ed] to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, . . . or other property owned by, or under the control of, a financial institution, by means of false pretenses, representations, or promises."[75]  Although the Fifth Circuit has not addressed whether a non-bank entity has standing to assert bank fraud as a predicate act supporting a RICO claim, several circuits—and several district courts within the Fifth Circuit—have concluded that *only* financial

---

[72] *Marriott Bros. v. Gage*, 704 F. Supp. 731, 740 (N.D. Tex. 1988) (internal quotation marks omitted), *aff'd* 911 F.2d 1105 (5th Cir. 1990).

[73] *Van Velzer v. Amegy Bank*, 713 Fed. App'x 377, 378 (5th Cir. 2018) (per curiam).

[74] *See Tel-Phoneic Servs. Inc.*, 975 F.2d at 1139; *Van Velzer*, 713 Fed. App'x at 378.

[75] 18 U.S.C. § 1344; *see Loughrin v. United States*, 573 U.S. 351, 356-57 (2014).

institutions have standing to do so.[76]  The Sankars ask this Court to likewise hold that, because ASPR is not a financial institution, it cannot assert fraud on a financial institution as a predicate act to support its RICO claim.

31.     Further, no factual allegations supporting any of the elements of fraud on a financial institution are present in the Amended Complaint.  In fact, to the extent ASPR or the other Plaintiffs vaguely allege P. Sankar made any misrepresentations in connection with a loan, they contend *they* (not the financial institution involved with the loan, BB&T) were the victim of the purported fraud.  In fact, throughout the Amended Complaint, ASPR alleges BB&T was a co-conspirator of P. Sankar.[77]  As discussed below, to qualify as a co-conspirator in a RICO civil claim, BB&T would, by definition, have to know of and agree to the RICO violation.  Based on Plaintiffs' allegations that BB&T was a co-conspirator, which are not plead in the alternative, Plaintiffs are necessarily contending BB&T was a knowing participant in the "fraudulent" loan scheme, which (if taken as true) means it could not have been defrauded by P. Sankar.[78]

    *c.  ASPR has not pleaded a pattern of racketeering activity with specificity*

32.     ASPR's RICO claims also fail because it has not sufficiently alleged a "pattern of racketeering activity."  As explained above, to establish a "pattern of racketeering activity," a plaintiff must allege at least two predicate criminal acts that are related and amount to or pose a continued threat of continued activity.[79]  The RICO statute was enacted to address continued

---

[76] *See Nelson v. Nelson*, No. CIV 14-4854, 2015 WL 4136339, at *7 (D. Minn. July 8, 2015), *aff'd*, 833 F.3d 965 (8th Cir. 2016); *Bressner v. Ambroziak*, 379 F.3d 478, 482 (7th Cir. 2004); *Brickley for CryptoMetrics, Inc. Creditors' Tr. v. ScanTech Identification Beams Sys., LLC*, 566 B.R. 815 (Bankr. W.D. Tex. 2017) (collecting cases); *Vanderbilt Mortg. & Fin.*, 735 F. Supp. 2d at 696-97; *B Choice Ltd. v. Epicentre Dev. Assocs. LLC*, No. CV H-14-2096, 2016 WL 3911123, at *13 (S.D. Tex. May 12, 2016).

[77] Plaintiffs' Amended Complaint, ¶¶ 43, 206, 220, 234.

[78] Again, the Sankars deny that there was any conspiracy or that the BB&T loan was part of a fraudulent loan scheme; however, even if the loan was fraudulent, it could not serve as a predicate act for ASPR to bring a RICO claim.

[79] *St. Germain*, 556 F.3d at 263.

criminal activity, not short-term criminal conduct.[80]  The allegedly fraudulent transaction at the

core of ASPR's RICO claims is the so-called "Fraudulent LBO" involving the BB&T loan.

Plaintiffs' amended complaint confirms that the BB&T loan was paid in full.[81]  Thus, no

continuing threat exists with respect to that transaction.  Further, ASPR's allegations relevant to

the "pattern" of racketeering activity are: (1) the Sankars and SNG "used the wires when

transferring the loan proceeds from BB&T and when paying down the loans owed to BB&T;"

(2) "The Sankars, through their affiliates, also had accounts at First Citizens Bank and used the

wires to transfer monies to BB&T in furtherance of their unlawful activities;" (3) "The wires

were also used to divert insurance payments to the SNG bank accounts;" and (4) "The Sankars

and SNG . . . used the mail and wires to transmit false financial and bank information and

documents, including the BB&T Certification."[82]  Accepting these conclusory allegations as true,

they at best amount to one or two allegations of unrelated wrongful conduct, but they do not

establish a "pattern" of unlawful activity.[83]  The remaining allegations do not describe additional

wrongful actions, but rather multiple steps of the same activity—obtainment and paying off of

the BB&T loan.  Thus, ASPR has not pleaded "a continuity of racketeering" activity sufficient to

support a claim that the Sankars committed a RICO violation.[84]

### 3.    ASPR has not alleged an underlying RICO claim to support its RICO conspiracy claim

33.    ASPR's civil RICO conspiracy claim against the Sankars should be dismissed

because, as shown above, ASPR has failed to adequately allege an underlying civil RICO

violation.  The failure to adequately plead the elements of a violation of Sections 1962(a), (b), or

---

[80] *Tel-Phonic Servs.*, 975 F.2d at 1140.
[81] Plaintiffs' Amended Complaint, ¶ 131.
[82] *Id.* at ¶¶ 154-55, 157-58.
[83] *See H.J. Inc. v. Nw. Bell Tel. Co.,* 492 U.S. 229, 230 (1989) ("[C]riminal conduct forms a pattern if it embraces criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.").
[84] *See id.*

(c) of the RICO statute "implicitly means that [Plaintiffs] cannot plead a conspiracy to violate [any of those] section[s]."[85] Thus, because ASPR has failed to adequately plead a claim arising under Sections 1962(a), (b), or (c) of the civil RICO statute, its conspiracy claim brought pursuant to Section 1962(d) should likewise be dismissed.[86]

### 4.    ASPR has not adequately alleged the Sankars conspired to violate civil RICO

34.    ASPR's claim that all Defendants, including the Sankars, conspired to commit civil RICO fails for the additional reason that ASPR has not adequately pleaded the elements of that claim. To state a claim under Section 1962(d), a plaintiff must allege (1) two or more people agreed to commit a substantive RICO offense; and (2) the defendant knew of and agreed to the overall objective of the RICO scheme.[87] To be liable, a RICO defendant must have known of the conspiracy and adopted the goal of advancing or facilitating the criminal endeavor.[88]

35.    ASPR's allegation of the Sankars' conspiratorial actions is limited to a vague claim that P. Sankar informed B. Sankar and others of a "scheme to defraud ASPR through SNG Dialysis."[89] ASPR continues by claiming that B. Sankar "conspired" to commit mail fraud, wire fraud and bank fraud by "facilitating the BB&T Loan and conspiring to execute and deliver the Loan Documents"[90] and by asserting, with no factual support, that B. Sankar "understood the purpose of [his] actions was to aid [P.] Sankar and SNG in furthering their scheme" and that he "understood and agreed to the plan."[91] These threadbare and conclusory allegations are simply not enough to support ASPR's claims that the Sankars (and especially B. Sankar) were part of a

---

[85] *Nolen v. Nucentrix Broadband Networks, Inc.*, 293 F.3d 926, 930 (5th Cir. 2002) (quoting *Simon v. Value Behavioral Health, Inc.*, 208 F.3d 1073, 1084 (9th Cir. 2000)).

[86] *Id.*

[87] *United States v. Sharpe*, 193 F.3d 852, 869 (5th Cir. 1999).

[88] *Chaney v. Dreyfus Serv. Corp.*, 595 F.3d 219, 239 (5th Cir. 2010).

[89] Plaintiffs' Amended Complaint, ¶ 245.

[90] *Id.* at ¶ 246(a).

[91] *Id.* at ¶ 248.

civil RICO conspiracy.[92]  "A court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."[93]  Here, dismissal is in order because ASPR's conclusory allegations fail to set forth any facts showing the Sankars knew of and agreed to a goal of advancing a RICO scheme.[94]

**D.     ASPR has failed to state a claim for fraud against P. Sankar (Count XI)**

36.     ASPR also asserts a fraud claim against P. Sankar.  To adequately state a fraud claim, a plaintiff must allege: "1) a misstatement or omission; 2) of material fact; 3) made with the intent to defraud; 4) on which the plaintiff relied; and 5) which proximately caused the plaintiff's injury."[95]  Moreover, in the Fifth Circuit, the alleged misrepresentations must be pleaded according to the heightened Rule 9(b) pleading standard.[96]  This requirement imposes on plaintiffs the duty to state the "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."[97]

37.     ASPR posits two separate bases for its fraud claim against P. Sankar.  First, it alleges that, prior to SNG's contribution of assets to Naranjito, P. Sankar arranged the BB&T loan committing Naranjito as a borrower and encumbering the assets of ASPR and Naranjito, and that he misrepresented and/or concealed from Plaintiffs the existence of the loan, the collateral pledged to BB&T, and any related agreements.[98]  In support of this claim, ASPR alleges that: "[P.] Sankar and SNG knew all along that the statements to Rivera and ASPR were

---

[92] *Iqbal*, 556 U.S. at 678.  The allegations against B. Sankar are particularly sparse and conclusory. In fact, B. Sankar is specifically identified by name only a handful of times throughout the body of the Amended Complaint.
[93] *Id.* at 679.
[94] *Id.* at 678.
[95] *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997).
[96] *Id.*
[97] *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1068 (5th Cir. 1994).
[98] Plaintiffs' Amended Complaint, ¶¶ 259-261.

false;" "[P.] Sankar and SNG made the false statements to Rivera and ASPR with the intent of
[sic] that such representations induce ASPR to enter the joint venture in Naranjito and invest as
its minority member;" and, as a result of "[P.] Sankar's and SNG's false statements, ASPR
suffered injury in its reliance upon their representation that Naranjito's assets would be
unencumbered and free of any liens."[99]   Second, ASPR alleges that "[P.] Sankar and SNG also
made misrepresentations throughout the joint venture that there were no profits for distribution,"
when in reality P. Sankar had been making distributions to himself through SNG, and that "such
representations were false when made and ASPR, [sic] induced ASPR to continue the joint
venture without seeking relief or termination, and relied on such statements to its detriment."[100]
As discussed below, none of these allegations meet the heightened Rule 9(b) pleading standard.

### 1.   ASPR has failed to state with particularity any misrepresentation made by P. Sankar

38.     A party asserting a fraud claim must "'specify the statements contended to be
fraudulent, identify the speaker, state when and where the statements were made, and explain
why the statements were fraudulent.'"[101]   "Succinctly stated, Rule 9(b) requires a party to
identify 'the who, what, when, where, and how' of the events constituting the purported
fraud."[102]   Absent from Plaintiffs' Amended Complaint is any specific allegation of when or
where, or to whom, P. Sankar made any false material statement.  Thus, dismissal of this fraud
claim is proper.

### 2.   ASPR has failed to allege any detrimental reliance

39.     Even if P. Sankar did make a statement that could be construed as a
misrepresentation, which he did not, ASPR has failed to, in more than a conclusory way, allege

---

[99] *Id.* at ¶¶ 263-265.
[100] *Id.* at ¶ 266.
[101] *Herrmann Holdings, Ltd. v. Lucent Techs., Inc.*, 302 F.3d 552, 564-65 (5th Cir. 2002)) (citations omitted).
[102] *Moore v. Allstate Tex. Lloyds*, No. 4:17-CV-287-A, 2017 WL 2963473, at *2 (N.D. Tex. July 11, 2017) (quoting
*Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 339 (5th Cir. 2008)).

that it relied on such misrepresentation or that reliance caused it injury.[103] Although ASPR generally alleges that the parties agreed not to encumber the jointly-contributed assets, it does not allege that it would not have entered into the Naranjito joint venture with SNG had it known SNG would encumber assets, nor has ASPR pleaded any facts indicating the plausibility of that contention. Likewise, ASPR has not alleged its reliance on any alleged misrepresentation actually caused it injury. To the contrary, the amended complaint actually establishes that the value of Naranjito was not diminished by the allegedly undisclosed BB&T loan or lien because the business sold for an increased value of $7 million. In short, the fraud claim does not comply with Rule 9(b) and should be dismissed because ASPR has not pleaded, in more than a conclusory way, that it relied to its detriment on, or was damaged by, any misrepresentation of P. Sankar.

### 3. ASPR's fraud claim is barred by the economic loss rule

40. For the same reasons discussed above with respect to Plaintiffs' breach of fiduciary duty claim, dismissal of the fraud claim is also warranted based on the economic loss rule. Under the economic loss rule "a party states a tort claim when the duty allegedly breached is independent of the contractual undertaking and the harm suffered is not merely the economic loss of a contractual benefit."[104]

41. Here, ASPR's fraud claim can be reduced to the following allegations: (1) SNG obtained a loan encumbering the assets of Naranjito, despite P. Sankar and Rivera *agreeing* that those assets would not be encumbered, and P. Sankar knew of, but did not disclose, the

---

[103] *See DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 688 (Tex. 1990) (fraud requires a showing that the misrepresentation was detrimentally relied upon by plaintiff).

[104] *Clark*, 455 S.W.3d. at 288-89 (quoting *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014) (per curiam)).

encumbrance;[105] and (2) P. Sankar and SNG made misrepresentations "that there were no profits for distribution to be made when, all along, [P. Sankar] made unilateral distributions to himself through SNG without equivalent distributions to ASPR."[106] ASPR does not seek any damages in connection with its fraud claim beyond what it seeks on its breach of contract claims. Each of these "fraud" allegations amounts to nothing more than a dressed-up breach of contract claim.[107] This is made clear by comparing the fraud allegations with the breach of contract allegations in Counts I and II of the amended complaint, which allege a breach of the Member Contribution Agreement based on the same encumbrance of Naranjito's assets[108] and a breach of the Operating Agreement based on identical allegations of unauthorized distributions to SNG or the Sankars without proportional distributions to ASPR.[109] Thus, the fraud claim is barred by the economic loss rule and should be dismissed.

**E.     ASPR has failed to adequately allege a civil conspiracy claim against the Sankars (Count XII)**

42.     ASPR's cause of action for civil conspiracy is premised upon a contention that all Defendants conspired "to defraud ASPR [by] ... promoting and perpetuating [P.] Sankar's and SNG's self-dealing and disloyalty ... [and by conspiring] to deprive ASPR of its full equity interest in Naranjito."[110] As shown below, neither an underlying tort required to support a conspiracy claim nor the essential elements of a civil conspiracy are adequately plead.

**1.     ASPR has failed to establish an underlying tort**

---

[105] Plaintiffs' Amended Complaint, ¶¶ 262-264. As with most of Plaintiffs' allegations, this contention is disputed; however, for purposes of this motion that does not matter.
[106] *Id.* at ¶ 266.
[107] *See Clark*, 455 S.W.3d at 288.
[108] Plaintiffs' Amended Complaint, ¶ 171.
[109] *Id.* at ¶ 177(a).
[110] *Id.* at ¶¶ 270-271.

43.     Civil conspiracy is a derivate tort, with the result that "liability for conspiracy depends on participation in some underlying tort."[111]   Where an underlying tort claim fails, the conspiracy claim based on it also fails.[112]   Because, as shown above, ASPR has not alleged a viable underlying fraud claim, its civil conspiracy claim should also be dismissed.

### 2.    ASPR has alleged no facts to support the elements of civil conspiracy

44.     Even if ASPR had sufficiently pleaded an underlying tort, its civil conspiracy claim should be dismissed because its essential elements have not been adequately pleaded.  To state a claim for civil conspiracy in Texas, a plaintiff must allege: "(1) a combination of two or more persons; (2) [who] seek to accomplish an object or course of action; (3) [and] reach a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts [taken] in pursuance of the object or course of action; and (5) damages occur as a proximate result."[113]   To satisfy the "meeting of the minds" element, a plaintiff must allege facts showing the defendants had the "specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means."[114]   The parties "must be aware of the harm or wrongful conduct at the inception of the combination or agreement."[115]

45.     ASPR only generally and in a conclusory way alleges any of the elements of its conspiracy claim.  Specifically, it alleges: "Defendants conspired to deprive ASPR of its full equity interest in Naranjito;" "[B.] Sankar, Renal Physicians, PPG and BB&T each agreed with [P.] Sankar and SNG to defraud ASPR, and conspired to deceive ASPR by . . . concealing the BB&T Loan, misrepresenting the financial state of Naranjito, and facilitating the transfer of profits to SNG;" and "each Defendant performed one or more overt acts in pursuit of the

---

[111] *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).
[112] *Grant Thornton, LLP v. Prospect High Income Funds*, 314 S.W.3d 913, 930-31 (Tex. 2010).
[113] *First United Penecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 222 (Tex. 2017).
[114] *Wackman v. Rubsamen*, 602 F.3d 391, 408 (5th Cir. 2010) (quoting *Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996)).
[115] *Triplex Commc'ns, Inc. v. Riley*, 900 S.W.2d 716, 719 (Tex. 1995).

conspiracy."[116]   But ASPR has not set forth any facts to show the defendants knew of any underlying or unlawful purpose of the "conspiracy," nor does it set forth any factual allegations discussing any type of communications or correspondence suggesting any of the defendants, much less the Sankars, had a meeting of the minds to engage in any conspiracy.   Accordingly, Plaintiffs' civil conspiracy claim should be dismissed pursuant to Rule 12(b)(6).

**F.       Plaintiffs' claims are barred by the applicable statute of limitations**

46.       Exhibits 2 through 5 to Plaintiffs' Amended Complaint establish that the Asset Purchase Agreement, Membership Contribution Agreement, Operating Agreement and Management Services Agreement were entered into and effective as of August 1, 2014.   Exhibit 6 confirms that the BB&T Guaranty Agreement was signed on August 5, 2014, which is important because this is the date Plaintiffs allege "the Sankars were able to execute the unauthorized BB&T Loan documents, close on the BB&T Loan, and use the loan proceeds to buy into Naranjito."[117]   Plaintiffs did not file this lawsuit until November 11, 2018, or more than four years after their alleged causes of action accrued.   Statutes of limitations are procedural rules; thus, Texas law controls.[118]   In Texas a cause of action accrues even if all damages are not known or have not occurred.[119]   "A statute of limitations may justify dismissal under Rule 12(b)(6) if it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or other basis to avoid the bar.[120]   This is precisely the type of case where a Rule 12(b)(6) dismissal is appropriate based on limitations.

---

[116] Plaintiffs' Amended Complaint, ¶¶ 271-273.
[117] Id. at ¶ 52.
[118] *Johansen v. E.I. Du Pont de Nemours & Co.,* 810 F. 2d 1377, 1380-81 (5th Cir. 1987).
[119] *See S.V. v. R.V.,* 933 S.W. 2d 1, 4 (Tex. 1996).
[120] *See Jones v. Alcoa, Inc.,* 339 F.3d 359, 366 (5th Cir. 2003).

47.     The statute of limitations for a civil RICO suit is four years.[121]  The same four-year prescriptive period applies to fraud, breach of fiduciary duty, and breach of contract claims.[122]   Civil conspiracy claims are subject to a two-year statute of limitations.[123]   Plaintiffs aver that the Sankars' wrongful conduct and conspiratorial acts occurred some fifty-one (51) months before suit was filed when the BB&T loan was procured and Naranjito was formed in August 2014.  This is a case where "reasonable minds could not differ about the conclusion to be drawn from the facts in the record, [thus,] the start of the limitations period may be determined as a matter of law."[124]  Plaintiffs' pleading confirms the alleged wrongful acts occurred more than four years ago, such that all of the claims against the Sankars are barred by limitations.

## G.     ASPR failed to verify claims brought derivatively on behalf of Naranjito (Counts II & IV)

48.     Finally, to the extent ASPR asserts derivative causes on behalf of Naranjito for breach of the Operating Agreement (Count II) and breach of fiduciary duty (Count IV), those claims should be dismissed for ASPR's failure to comply with Rule 23.1 of the Federal Rules of Civil Procedure.  Rule 23.1 requires shareholders or members of a corporation or unincorporated association to, among other things, verify any derivative claim brought on behalf of the corporation or unincorporated association.[125]  ASPR has not verified any portion of the Amended Complaint, much less the specific causes of action purported to be brought derivatively.

---

[121] *Agency Holding Corp. v. Malley-Duff & Assocs., Inc.,* 483 U.S. 143, 156 (1987).
[122] *Williams v. Khalaf,* 802 S.W. 2d 651, 654 (Tex. 1990) (fraud); TEX. CIV. PRAC. & REM. CODE § 16.004(a)(5) (breach of fiduciary duty); *Stine v. Stewart,* 80 S.W.2d 586, 592 (Tex. 2002) (breach of contract).
[123] *Stevenson v. Koutzarov,* 795 S.W.2d 313, 318 (Tex. App.—Houston [1st Dist.] 1990, writ denied).
[124] *Villarreal v. Wells Fargo Brokerage Services, LLC,* 315 S.W.3d 109, 119 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Childs v. Haussecker,* 974 S.W.2d 31, 44 (Tex. 1998)).
[125] FED. R. CIV. P. 23.1.

Accordingly, ASPR is not entitled to assert any cause of action on behalf of Naranjito, with the result that ASPR's derivative claims should be dismissed.[126]

## IV. CONCLUSION & PRAYER

Based on the foregoing, the Sankars move the Court to dismiss with prejudice the claims asserted against them. And, because Plaintiffs have already amended their pleading once, Movants ask that any request by Plaintiffs to again amend their pleading for the purposes of correcting deficiencies identified in this motion and brief be denied.

Respectfully submitted,

**Shayne D. Moses**
Texas State Bar No. 14578980
smoses@mph-law.com
**Timothy D. Howell**
Texas State Bar No. 24002315
thowell@mph-law.com

**MOSES, PALMER & HOWELL, L.L.P.**
309 W. 7th Street, Suite 815
Fort Worth, Texas 76102
Telephone: (817) 255-9100
Facsimile: (817) 255-9199

**ATTORNEYS FOR DEFENDANTS**
**PONNIAH SANKARAPANDIAN a/k/a**
**PONNIAH SANKAR and BALAMURGUGAN**
**P. SANKARAPANDIAN a/k/a BALA SANKAR**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record were served this 11th day of February, 2019, with a copy of the foregoing document via email pursuant to Rule 5(b)(2)(E) of the Federal Rules of Civil Procedure.

**Shayne D. Moses**

l:\sankarapandian\pleadings\federal case\sankars' jt mtn to dism am complaint & brief (final).docx

---

[126] *Id.*; *see also DDH Aviation, L.L.C. v. Holly*, No. 3:02-CV-2598-P, 2005 WL 770595, at *5 (N.D. Tex. Mar. 31, 2005) (dismissing derivative claims for, among other reasons, failure to verify).