IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION


U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

SEP - 3 2019

CLERK, U.S. DISTRICT COURT
By_____
       Deputy

AMBULATORY SERVICES OF PUERTO     §
RICO, LLC, ON ITS BEHALF AND      §
DERIVATIVELY ON BEHALF OF         §
SNG NARANJITO, LLC, ET AL.,       §
                                  §
        Plaintiffs,               §
                                  §
VS.                               §   NO. 4:18-CV-916-A
                                  §
SANKAR NEPHROLOGY GROUP, LLC,     §
ET AL.,                           §
                                  §
        Defendants.               §

MEMORANDUM OPINION AND ORDER

Came on for consideration (1) the motion of defendants
Sankar Nephrology Group, LLC ("SNG"), Renal Physicians of North
Texas, LC ("Renal Physicians"), and PPG Health, P.A.
("PPG")(collectively, the "SNG defendants") to dismiss,[1] (2) the
motion of defendants Ponniah Sankarapandian a/k/a Ponniah Sankar
("Ponniah") and Balamurugugan P. Sankarapandian a/k/a Bala Sankar
("Bala")(together, the "Sankars") to dismiss, and (3) the motion
of defendant Branch Banking and Trust Company ("BB&T") to
dismiss, each motion being directed to plaintiffs' second amended
complaint. The court, having considered the motions, the
responses of plaintiffs, Ambulatory Services of Puerto Rico, LLC
("ASPR"), on its own behalf and derivatively on behalf of SNG

---

[1]The motion is really one for partial dismissal as it does not address Count Two, which alleges
breach of contract by SNG.

Naranjito, LLC ("Naranjito"), and Carlos R. Rivera ("Rivera"),
the replies, the record, and applicable authorities, finds that
the motions  of the SNG defendants and the Sankars should be
granted in part, and that the BB&T motion should be granted.

I.

## Plaintiffs' Claims

On November 12, 2018, plaintiffs filed their original
complaint in this action. Doc.[2] 1. On February 1, 2019, they
filed their amended complaint. Doc. 36. In response, defendants
filed motions to dismiss. Docs. 38, 40, 45. And, on June 27,
2019, pursuant to the court's order of June 13, 2019, Doc. 79,
plaintiffs filed their second amended complaint, Doc. 80, which
is the operative pleading. Plaintiffs allege:

Rivera originally founded a hemodialysis clinic in Puerto
Rico, Centro de Dialisis San Miguel Arcangel ("San Miguel"), and
wanting to start another one, he sought an investor. Doc. 80 at
7, ¶¶ 22, 24. His search led him to SNG, which owned and operated
other dialysis clinics, and Ponniah, SNG's controlling member.
Id. at ¶ 24 & 10, ¶ 38. Based on representations made by Ponniah
regarding his prior experience successfully operating SNG
dialysis clinics, the future profitability of Naranjito, and his

_____

[2]The "Doc. __" reference is to the number of the item on the docket in this action.

ability to complete the transaction without outside funding, Rivera agreed to sell 60% of San Miguel.[3] Id. at 8, ¶¶ 26, 28.

The parties entered into a number of agreements regarding Naranjito. Id. at 8, ¶ 30. Pursuant to an Asset Purchase Agreement, SNG agreed to buy 60% of San Miguel's assets, with San Miguel transferring the remaining 40% to Rivera's company, ASPR. Doc. 81 at Appx. 0007-0034. Then, SNG and ASPR contributed their interests in San Miguel (the "contributed assets") to the new dialysis clinic, Naranjito, through a Membership Contribution Agreement ("MCA"). Id. Appx. 0036-0040. Thus, SNG became a 60% member and ASPR a 40% member of Naranjito. Id. at Appx. 0085. SNG and ASPR also entered into a Limited Liability Company Operating Agreement for Naranjito (the "Operating Agreement"). Id. Appx. 0042-0089. Pursuant to the Operating Agreement, a supermajority of owners was required to approve the borrowing of money or obtaining credit except for short-term unsecured obligations in the ordinary course of business. Doc. 80 at 10, ¶¶ 35-36; Doc. 81 at Appx. 0065. And, Renal Physicians entered into a Management Services Agreement ("MSA") pursuant to which it agreed to provide management services to Naranjito. Doc. 81 at Appx. 0091-0103.

---

[3]It is apparent from the context that the referenced dates of the representations are incorrect, inasmuch as the sale occurred in 2014.

To fund SNG's acquisition of 60% of San Miguel's assets, SNG and the Sankars got a secured loan from BB&T in the principal amount of $3,700,000 (the "BB&T loan"), leveraged all of Naranjito's assets, including ASPR's contributed assets, and granted a lien in favor of BB&T, and added Naranjito as a co-obligor on the BB&T loan. Doc. 80 at 12, ¶ 45. Neither Ponniah, SNG, or Renal Physicians ever informed Rivera of these obligations. Id. ¶ 46. BB&T knew that the BB&T loan must be kept secret from Rivera and acted to hide the fraudulent nature of the transaction. Id. at 14-15, ¶¶ 55, 59.

Renal Physicians caused hundreds of thousands of dollars to be transferred from Naranjito's bank account to an account or accounts controlled by SNG, which then used a portion of those funds to make electronic payments toward the BB&T loan. Doc. 80 at 35-36, ¶ 143. The Sankars and SNG then concealed those payments by emailing Rivera financial statements that omitted them. Id. at 40, ¶ 159.

ASPR and SNG eventually decided to sell Naranjito's assets. Rivera secured a $7 million offer from Bio-Medical Applications of Puerto Rico, Inc. ("Bio-Medical"), which belongs to an international conglomerate operating under the name Fresenius Medical Care. Doc. 80 at 27, ¶ 106. On February 9, 2016, SNG and ASPR executed an Agreement to Sell Assets of SNG Naranjito, LLC

4

to Fresenius Medical Care (the "Member Sale Agreement"). Id. at 28, ¶ 107; Doc. 81 at Appx. 0112. The pertinent part of that agreement states that "the allocation of the proceeds of the sale of ownership interest shall be as follows" and indicates that SNG will be allocated $4,200,000, consistent with its 60% ownership interest in Naranjito, and ASPR will be allocated $2,800,000, consistent with its 40% ownership interest. Id. On January 3, 2017, Bio-Medical, at the direction of the Sankars and SNG, processed two wire transfers totaling $7 million: one transfer of $2,719,638.20 to an account in the name of SNG and Naranjito to satisfy the BB&T loan, and another in the amount of $4,280,361.80 to a separate account in Naranjito's name. Doc. 80 at 32, ¶ 132.

Following the sale to Fresenius, plaintiffs investigated and determined that defendants had defrauded them and others through a scheme of investing in and operating dialysis clinics including Naranjito. Doc. 80 at 33-42, ¶¶ 134-62. Through forensic analysis, plaintiffs discovered self-dealing by the Sankars and SNG and improprieties by other defendants. Id. at 42-43, ¶¶ 163-68.

The second amended complaint sets forth fifteen causes of action, which are as described in the court's memorandum opinion and order signed May 28, 2019, Doc. 76 at 2-8, except that what was described in that opinion as Count XVI is now Count Fifteen

and Counts XV and XVII of the amended complaint are no longer being asserted.

Counts Four and Eleven reflect that they are brought by Rivera and ASPR, but as discussed, _infra_, Rivera is really not asserting any claims. The remaining counts are asserted only by ASPR, with the exception of Count Fifteen, wherein ASPR and Naranjito request judgment in their favor.[4] Doc. 80 at 65.

## II.

## Grounds of the Motions

In their respective motions to dismiss the second amended complaint, defendants assert that the claims against it or him should be dismissed for want of sufficient pleading.

## III.

## Applicable Pleading Standards

Rule 8(a)(2) of the Federal Rules of Civil Procedure provides, in a general way, the applicable standard of pleading. It requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests,"

---

[4] The SNG defendants point out in their motion to dismiss that the notable revision to the second amended complaint is that plaintiffs have dropped all derivative claims (except the allegation in Count Fifteen, which appears to have been another scrivener's error). Doc. 83 at 1 n.1. Plaintiffs make no argument to the contrary.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal
quotation marks and ellipsis omitted). Although a complaint need
not contain detailed factual allegations, the "showing"
contemplated by Rule 8 requires the plaintiff to do more than
simply allege legal conclusions or recite the elements of a cause
of action. Twombly, 550 U.S. at 555 & n.3. Thus, while a court
must accept all of the factual allegations in the complaint as
true, it need not credit bare legal conclusions that are
unsupported by any factual underpinnings. See Ashcroft v. Iqbal,
556 U.S. 662, 679 (2009) ("While legal conclusions can provide
the framework of a complaint, they must be supported by factual
allegations.").

Moreover, to survive a motion to dismiss for failure to
state a claim, the facts pleaded must allow the court to infer
that the plaintiff's right to relief is plausible. Iqbal, 556
U.S. at 678. To allege a plausible right to relief, the facts
pleaded must suggest liability; allegations that are merely
consistent with unlawful conduct are insufficient. Id. In other
words, where the facts pleaded do no more than permit the court
to infer the possibility of misconduct, the complaint has not
shown that the pleader is entitled to relief. Id. at 679.
"Determining whether a complaint states a plausible claim for
relief . . . [is] a context-specific task that requires the

reviewing court to draw on its judicial experience and common sense." Id.

As the Fifth Circuit has explained: "Where the complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claims, the complaint fails to satisfy the requirement of notice pleading." Anderson v. U.S. Dep't of Housing & Urban Dev., 554 F.3d 525, 528 (5th Cir. 2008). In sum, "a complaint must do more than name laws that may have been violated by the defendant; it must also allege facts regarding what conduct violated those laws. In other words, a complaint must put the defendant on notice as to what conduct is being called for defense in a court of law." Id. at 528-29. Further, the complaint must specify the acts of the defendants individually, not collectively, to meet the pleading standards of Rule 8(a). See Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir. 1999); see also Searcy v. Knight (In re Am. Int'l Refinery), 402 B.R. 728, 738 (Bankr. W.D. La. 2008).

In considering a motion to dismiss for failure to state a claim, the court may consider documents attached to the motion if they are referred to in the plaintiff's complaint and are central to the plaintiff's claims. Scanlan v. Tex. A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003). The court may also refer to matters of public record. Papasan v. Allain, 478 U.S. 265, 268 n.1 (1986);

Davis v. Bayless, 70 F.3d 367, 372 n.3 (5th Cir. 1995); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994). This includes taking notice of pending judicial proceedings. Patterson v. Mobil Oil Corp., 335 F.3d 476, 481 n.1 (5th Cir. 2003). And, it includes taking notice of governmental websites. Kitty Hawk Aircargo, Inc. v. Chao, 418 F.3d 453, 457 (5th Cir. 2005); Coleman v. Dretke, 409 F.3d 665, 667 (5th Cir. 2005).

Rule 9(b) sets forth the heightened pleading standard imposed for fraud claims: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The Fifth Circuit requires a party asserting fraud to "specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." Hermann Holdings, Ltd. v. Lucent Techs., Inc., 302 F.3d 552, 564-65 (5th Cir. 2002)(internal quotations and citations omitted). Succinctly stated, Rule 9(b) requires a party to identify in its pleading "the who, what, when, where, and how" of the events constituting the purported fraud. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 339 (5th Cir. 2008). Rule 9(b) applies to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud. Frith v. Guardian Life Ins. Co. of Am., 9 F. Supp. 2d 734, 742 (S.D. Tex.

1998). Statutory claims based on allegations of fraud, such as violations of the Texas Insurance Code, the TDCA, and the Texas DTPA, as well as those for fraud, fraudulent inducement, fraudulent concealment, and negligent misrepresentation are subject to the requirements of Rule 9(b). Motten v. Chase Home Fin., 831 F. Supp. 2d 988, 994 (S.D. Tex. 2011); Berry v. Indianapolis Life Ins. Co., 608 F. Supp. 2d 785, 800 (N.D. Tex. 2009); Frith, 9 F. Supp. 2d at 742.

IV.

## Analysis

A.  Motion of SNG, Renal Physicians, and PPG

In their first ground, the SNG defendants seek dismissal of Count One for breach of the MCA because plaintiffs have not articulated how ASPR was damaged as a result of the alleged breach. Doc. 83 at 5-6. They argue that there cannot have been any damage since Rivera was able to sell Naranjito despite the existence of the BB&T loan and lien. Id. As ASPR has pleaded, it would not have entered into the agreement had it known SNG and Ponniah did not have the resources to pay for their investment. Further, profits that would have gone to ASPR as a member of Naranjito were diverted to pay the BB&T loan. Count One is sufficiently pleaded.

Next, the SNG defendants allege that ASPR has failed to state a claim for breach of the Member Sale Agreement (Count Three). Doc. 83 at 6. The court agrees. The so-called Member Sale Agreement is a one-page document that is merely a corporate resolution. It is not a contract between the parties that obligates either of them to do anything. It merely authorizes the sale of assets and verifies how the proceeds are to be divided. Doc. 81 at Appx 0112. In any event, plaintiffs acknowledge that more than 40% of the sales proceeds have been placed in escrow. Doc. 80 at 32, ¶ 132; Doc. 81 at Appx. 0004. They do not explain how payment of the BB&T loan from the proceeds "violated the allocation memorialized in the Member Sale Agreement." Doc. 86 at 7.

In the third ground, the SNG defendants assert that ASPR has failed to state a claim for breach of fiduciary duty under Count Four. Doc. 83 at 7-10. They argue that the alleged self-dealing is excused by a document Rivera signed, but do not bother to provide a copy of the document. The court is satisfied that ASPR has adequately pleaded the breach of fiduciary duty claims and that recovery is not necessarily barred by the economic loss rule. See Fid. & Deposit Co. v. Commercial Cas. Consultants, Inc., 976 F.2d 272, 273 (5th Cir. 1992)(contract creating special relationship may impose duty that gives rise to tort action);

Sharyland Water Supply Corp. v. City of Alton, 354 S.W.3d 407, 418-19 (Tex. 2011)(economic loss may be recovered for breach of fiduciary duty). Plaintiffs do admit, however, that this ground of the motion should be granted in part. They say that the inclusion of Rivera as a party was a result of a scrivener's error. Doc. 86 at 7 n.3.

In their fourth ground, the SNG defendants say that ASPR lacks standing to assert a claim for breach of the MSA (Count Five). Doc. 83 at 10-11. The signatories of the MSA are Naranjito and Renal Physicians. Doc. 81 at Appx. 0103. The MSA specifically states that it is for the benefit of the signatories and that "there is no intent by either Party to create or establish third-party beneficiary status or rights . . . and no such third party shall have any right to enforce any right or enjoy any benefit created or established under [the MSA]." Id. at Appx. 0102-03, ¶ 7.15. The language is clear and the court will not create a third-party beneficiary status by implication. MCI Telecomms. Corp. v. Tex. Utils. Elec. Corp., 995 S.W.2d 647, 651-52 (Tex. 1999).

The SNG defendants next address claims asserted under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961-68, ("RICO"). Doc. 83 at 11-17. The RICO provisions at issue

> state, in their simplest terms, that
> (a) a person who has received income from a pattern of
> racketeering activity cannot invest that income in an
> enterprise;
> (b) a person cannot acquire or maintain an interest in
> an enterprise through a pattern of racketeering;
> (c) a person who is employed by or associated with an
> enterprise cannot conduct the affairs of the enterprise
> through a pattern of racketeering activity; and
> (d) a person cannot conspire to violate subsections
> (a), (b), or (c).

Abraham v. Singh, 480 F.3d 351, 354-55 (5th Cir. 2007)(describing

the requirements of 18 U.S.C. §§ 1962(a),(b),(c), and (d)). The

three common elements of each subsection are (1) a person who

engages in (2) a pattern of racketeering activity, (3) connected

to the acquisition, establishment, conduct, or control of an

enterprise. Id., 480 F.3d at 355. "Racketeering activity"

consists of two or more predicate criminal acts that are (1)

related and (2) "amount to or pose a threat of continued criminal

activity." Id.

Having studied the second amended complaint several times

over in considering the motions to dismiss, the court has been

hampered by the extremely poor drafting employed. For example,

ASPR pleaded an ongoing scheme, Doc. 80 at 51, ¶ 215, at 54, ¶

230, at 56, ¶ 245, but has argued that it was, in fact, a close-

ended pattern of racketeering activity. Doc. 86 at 14.

Nevertheless, the court is satisfied that ASPR has pleaded the

threat of ongoing activity and that the pattern extended for a

sufficient period of time so as to be "substantial" under RICO. Abraham, 480 F.3d at 356 (alleging a two-year scheme was sufficient).

In Count Six, ASPR pleads that "predicate acts are the proximate cause of the harm experienced" when the basis of a § 1962(a) claim is the investment of income from the racketeering activity in an enterprise. Doc. 80 at 51, ¶ 214; Abraham, 480 F.3d at 355; Davis-Lynch, Inc. v. Moreno, 667 F.3d 539, 550 (5th Cir. 2012)(injuries from predicate acts themselves are not enough under § 1962(a)). Plaintiffs do not explain how ASPR was injured by such investment, even assuming they had adequately pleaded facts to show such investment (which they have not).

Count Seven alleges the violation of RICO § 1962(b), which prohibits acquisition or maintenance of an interest in, or control of, an enterprise through a pattern of racketeering activity. Again, the SNG defendants point out that plaintiffs have alleged that the predicate acts are the proximate cause of harm. Doc. 83 at 15; Doc. 80 at 53, ¶ 229. And, plaintiffs' response, a brief footnote, Doc. 86 at 16 n.4, is nonsensical. Nevertheless, the court is satisfied that ASPR has alleged that its injuries occurred because SNG maintained control of Naranjito (and other clinics) through a pattern of racketeering activity. Crowe v. Henry, 43 F.3d 198, 205 (5th Cir. 1995); Vanderbilt

<u>Mortgage & Fin., Inc. v. Flores</u>, 735 F. Supp. 2d 679, 701-02
(S.D. Tex. 2010).

In Count Eight, ASPR alleges the violation of RICO §
1962(c). The SNG defendants urge that plaintiffs have not alleged
that the affairs of the RICO enterprise were conducted through a
pattern of racketeering activity. Doc. 83 at 16. Although the
court questions whether there will be proof that the dialysis
clinics constituted a RICO enterprise, the court is satisfied
that the allegation has been sufficiently pleaded. See <u>Nat'l Org.</u>
<u>for Women, Inc. v. Scheidler</u>, 510 U.S. 249, 259 (1994)(discussing
the meaning of "enterprise" as used in subsections (a), (b), and
(c) of section 1962).

In Count Nine, ASPR asserts a claim for violation of RICO §
1962(d). A conspiracy to violate RICO is comprised of three
elements: (1) knowledge by the defendant of the essential nature
of the conspiracy; (2) the defendant's objective manifestation of
an agreement to participate in the conduct of the affairs of an
enterprise; and (3) an overt act in furtherance of the
conspiracy. <u>Bonton v. Archer Chrysler Plymouth, Inc.</u>, 889 F.
Supp. 995, 1005 (S.D. Tex. 1995). Although a conspirator need not
have expressly agreed to violate RICO, he must have known of the
conspiracy and adopted the goal of advancing or facilitating the
criminal behavior. <u>Chancy v. Dreyfus Serv. Corp.</u>, 595 F.3d 219,

239 (5th Cir. 2010); <u>Marlin v. Moody Nat'l Bank, N.A.</u>, 248 F.
App'x 534, 538 (5th Cir. 2007). Because the core of a RICO
conspiracy is the agreement to commit the predicate acts, a
complaint must allege such an agreement; conclusory allegations
of conspiracy are insufficient. <u>Crowe</u>, 43 F.3d at 206. Here, the
SNG defendants maintain that plaintiffs have failed to make more
than conclusory allegations of an agreement. The court agrees.
For example, plaintiffs' contention that "it is axiomatic" that
SNG, Renal Physicians, and PPG Health agreed because the Sankars
own and control them, Doc. 86 at 18, is the very type of
conclusory allegation that fails to meet the test. Plaintiffs do
not allege any facts to support the existence of any agreement to
commit predicate acts.

In their next ground, the SNG defendants assert that ASPR
has failed to state a claim for unjust enrichment (Count Ten).
Doc. 83 at 18-19. Unjust enrichment is a theory of recovery that
a party may pursue through several equitable causes of action.
<u>See</u> <u>Ranieri v. AdvoCare Int'l, L.P.</u>, 336 F. Supp. 3d 701, 72
(N.D. Tex. 2018); <u>Hancock v. Chicago Title Ins. Co.</u>, 635 F. Supp.
2d 539, 560 (N.D. Tex. 2009). As plaintiffs specifically
recognize, "To plead a claim for unjust enrichment, plaintiff
must allege that the defendant has wrongfully secured a benefit
that would be unconscionable to retain and the benefit was

secured by the taking of an undue advantage of the plaintiff." Doc. 86 at 19 (quoting Mezz III, LLC v. Keenan, No. 4:17-CV-602-A, 2017 WL 6729183, at *3 (N.D. Tex. Dec. 28, 2017)). Plaintiffs have not pointed to facts alleged in the second amended complaint to support the claim for unjust enrichment asserted in Count Ten.[5]

Count Eleven is a claim for fraud. The elements of a fraud claim are: a misstatement or omission, of material fact, made with the intent to defraud, on which the plaintiff relied, which proximately caused the plaintiff's injury. Williams v. WMX Techs., Inc., 112 F.3d 175, 177 (5th Cir. 1997). Pleading fraud with particularity as required by Fed. R. Civ. P. 9 requires "time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby." Id. The plaintiff must identify the circumstances that indicate conscious behavior. Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1068 (5th Cir. 1994).

In response to this ground of the motion, plaintiffs refer the court to various paragraphs of the second amended complaint, but do not point to any that provide the necessary details of a

_____

[5]The parts of the second amended complaint cited do not support plaintiffs' representations as to what they pleaded. Doc. 86 at 18-19. Moreover, it appears that plaintiffs seek to recover all of Naranjito's profits when ASPR's share was only 40%, certainly not an equitable remedy.

17

fraud claim. For example, they never say that SNG, through a particular person, made a specific representation on a specific date that was not true. Nor do they ever spell out the specific harm resulting from their reliance on the specific representation. In the same general way, they refer to representations that there were no profits for distribution, but they do not point to any specific allegations in the complaint where the details of the representations are provided. Generally alleging that information was requested but not provided is insufficient.

Finally, the court notes that although the fraud claim purports to be brought on behalf of both Rivera and ASPR, the response addresses the claim as if it is brought only by ASPR. Doc. 86 at 20-23. For example, plaintiffs say that the second amended complaint "asserts that SNG defrauded ASPR." Id. at 20. Further, "ASPR is not required to allege all facts. . ." Id. at 21. And, "ASPR asserts such a fraud claim in Count Eleven." Id. at 22. Again, it is apparent that plaintiffs do not intend to proceed with a fraud claim against SNG on behalf of Rivera.

Count Twelve is a civil conspiracy claim. Civil conspiracy is a combination of two or more persons to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means. Tilton v. Marshall, 925 S.W.2d 672, 681 (Tex. 1996). It is a

derivative tort, meaning that liability depends upon participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable. Id. The elements of conspiracy are: (1) a combination of two or more persons, (2) who seek to accomplish an object or course of action, (3) a meeting of the minds on that object or course of action, (4) one or more unlawful, overt acts taken in pursuance thereof, and (5) damages as a proximate result. First United Pentecostal Church of Beaumont v. Parker, 514 S.W.3d 214, 222 (Tex. 2017). To satisfy the "meeting of minds" element, plaintiffs must allege that defendants had the specific intent to agree to accomplish an unlawful purpose or a lawful purpose by unlawful means. Wackman v. Rubsamen, 602 F.3d 391, 408 (5th Cir. 2010). As was the case with the RICO conspiracy claim, plaintiffs rely on conclusory allegations without any factual basis for establishing a conspiracy. Marlin, 248 F. App'x at 538.

Count Thirteen is a claim for conversion, which requires a showing that the plaintiff legally possessed property or was entitled to it; the defendant wrongfully exercised dominion and control over the property to the exclusion of plaintiff; the plaintiff demanded return of the property; and the defendant refused. United States v. Boardwalk Motor Sports, Ltd., 692 F.3d 378, 381 (5th Cir. 2012). To establish a claim for conversion of

money, the plaintiff must allege that money was delivered for safekeeping, intending it to be kept segregated and in substantially the same form in which it was delivered. Id. Plaintiffs have not made any reasonable explanation of why such a claim would be proper here.

In Count Fourteen, ASPR seeks an equitable accounting. To be entitled to such, it must show that the facts and accounts presented are so complex that adequate relief may not be obtained at law. Hutchings v. Chvron U.S.A., Inc., 862 S.W.2d 752, 762 (Tex. App.-El Paso 1993, writ denied). An accounting may be proper where one has not been provided as required by a contract or where equity would require that relief. Lewis v. Xium Corp., No. 07-08-0219-CV, 2009 WL 1953419, at *5-6 (Tex. App.-Amarillo July 8, 2009, pet. denied). In this case, it does not appear that an accounting would be required. See Doc. 80 at 42-43 (regarding a forensic analysis performed by BDO USA LLP). However, it would be premature to make that determination at this time.

B. Motion of Sankars

The Sankars seek dismissal of the claims asserted in Count Two of the second amended complaint because neither of them is a signatory to the Operating Agreement allegedly breached. Doc. 82 at 5-6. Ibe v. Jones, 836 F.3d 516, 524 (5th Cir. 2016) (generally, to be liable for breach of contract, one must be a

party to the contract); <u>Smith Int'l, Inc. v. Egle Grp., LLC</u>, 490 F.3d 380, 387 (5th Cir. 2007)(existence of a valid contract between the parties is a necessary element of a breach of contract claim); <u>Bernard Johnson, Inc. v. Continental Constructors, Inc.</u>, 630 S.W.2d 364, 369 (Tex. App.–Austin 1982, writ ref'd n.r.e.)(breach of contract generally may not be maintained against a non-party who is assigned duties by the terms of the contract; rather, the contracting party is liable for the actions of its representatives). Clearly, the Operating Agreement was "made and entered into" by SNG and ASPR, each as "Member." Doc. 81 at Appx. 0042, 0083. Throughout the complaint, plaintiffs refer only to SNG and ASPR as members of Naranjito. <u>See, e.g.</u>, Doc. 80, ¶¶ 32, 33, 37, 48, 107. The Operating Agreement itself says that admission of additional members requires a supermajority approval. Doc. 81 at Appx. 0054. If a new member is admitted, that new member must sign the form at Exhibit C, deliver the required initial capital contribution, and execute and deliver any other documents required by the managers. <u>Id.</u> Plaintiffs do not allege that any other member was ever admitted pursuant to the terms of the Operating Agreement. Although Exhibit C of the Operating Agreement bears the signature of Ponniah as member, no date is shown or number of units or capital contribution for his becoming a member of Naranjito is

reflected.[6] Doc. 81 at Appx. 0086. Based on the second amended complaint, no other conclusion could be reached but that the signatures were mistakenly put on Exhibit C during the process of executing documents pertinent to the transaction.

Plaintiffs additionally argue that the Sankars are estopped from challenging their liability under the Operating Agreement as they took a different position in an arbitration proceeding. Doc. 85 at 7-8. No documents regarding that argument have been provided; nor is there any indication that they are publicly available items of which the court could take judicial notice. In any event, the very case plaintiffs cite to support their position explains that judicial estoppel is only appropriate where the party sought to be estopped was successful in the position it took in the prior proceeding. USLIFE Corp. v. U.S. Life Ins. Co., 560 F. Supp. 1302, 1304-05 (N.D. Tex. 1983). Plaintiffs admit that the arbitration was abandoned when the parties rescinded their agreement to arbitrate. Doc. 85 at 8.

The Sankars next urge that the claim asserted in Count Four for breach of fiduciary duty should be dismissed. Doc. 82 at 6-10. Again, plaintiffs acknowledge that they did not intend to assert this claim on behalf of Rivera, but only ASPR. Doc. 85 at 8 n.2. And they point out that the Sankars do not dispute owing

---

[6]Contrary to plaintiffs' contention, Bala did not sign Exhibit C. Doc. 81 at Appx. 0086.

fiduciary duties to ASPR and Naranjito. Doc. 85 at 8. The court
is satisfied that the claim is sufficiently pleaded and that the
economic loss rule would not bar recovery, especially where the
Sankars were not parties to the agreements allegedly breached.
See Lamar Homes, Inc. v. Mid-Continent Cas. Co., 242 S.W.3d 1, 12
(Tex. 2007)(explaining economic loss rule).

The Sankars make roughly the same arguments as the SNG
defendants with regard to the sufficiency of the RICO claims. For
the reasons discussed in the preceding subsection of this
memorandum opinion and order, ASPR has not adequately pleaded a
claim under Count Six for violation of § 1962(a) or a claim under
Count Nine for violation of § 1962(d).

The Sankars next urge that plaintiffs have not asserted a
fraud claim against Ponniah that meets the pleading requirements
of Rule 9. The court agrees. Plaintiffs do allege (albeit with
the wrong dates) that Ponniah represented to them that he and SNG
had the financial capacity to fund the contemplated acquisition
without any third-party lending or leveraging, Doc. 80 ¶ 26, but
they do not allege that the statement was false, only that
financing was actually obtained. They cite to the MCA, but the
paragraph they reference simply does not say what they want it to
say. Id. at 9, ¶ 34. Further, they never identify any statements
made by Ponniah regarding the profits of Naranjito.

The Sankars maintain that plaintiffs have failed to sufficiently allege their participation in a conspiracy. In response to the motion, plaintiffs do not even bother to cite to allegations of the complaint that would support their claim. As previously discussed, the complaint does not spell out the necessary elements of the claim. In particular, the second amended complaint hardly refers to Bala at all, the basis for his liability apparently being that he is the son of Ponniah.

In their final ground, the Sankars argue that plaintiffs' claims are barred by limitations. The court is satisfied that limitations would more appropriately be addressed by motion for summary judgment.

C.    The BB&T Motion

BB&T first argues that plaintiffs have failed to allege sufficient facts to support a RICO conspiracy claim against it. Specifically, plaintiffs have failed to allege that BB&T both knew of and agreed to facilitate the criminal activity of the SNG defendants and Sankars. Doc. 84 at 7-13. Chancy, 595 F.3d at 239; Marlin, 248 F. App'x at 538. In response, plaintiffs cite nothing but conclusory allegations regarding BB&T's alleged activities. Doc. 87 at 5-10. They say that BB&T ignored its own internal policies and procedures, but never describe them. Instead, they describe normal banking activities, such as lending money and

24

providing on-line banking services. These are not RICO activities. Marlin, 248 F. App'x at 538-40; Sandza v. Barclays Bank PLC, 151 F. Supp. 3d 94 (D.D.C. 2015). They allege that BB&T "knew" of the Sankars' scheme, but the second amended complaint fails to allege facts from which to infer that BB&T actually had such knowledge. More importantly, it fails to allege facts to support the contention that BB&T agreed to assist in facilitating the criminal activities. That the scheme would have failed without banking is not enough. Cf. Securities Investor Protection Corp. v. City Nat'l Bank (In re Sunpoint Securities, Inc.), 350 B.R. 741, 750-51 (Bankr. E.D. Tex. 2006); DeWit v. Firstar Corp., 879 F. Supp. 947 (N.D. Iowa 1995).

BB&T next argues that, for the same reasons the RICO conspiracy claim fails, the claim for common law conspiracy must fail. The court agrees. The gist of a conspiracy is the harm intended to be caused. Marlin, 248 F. App'x at 238. "This inherently requires a meeting of the minds on the object or course of action." First United Pentecostal Church, 514 S.W.3d at 222. ASPR has not pleaded facts to support any meeting of minds to accomplish something unlawful or to accomplish something lawful by unlawful means. Id. At best, it offers a series of conclusory allegations.

In Count Fifteen, ASPR pleads that BB&T aided and abetted the Sankars and SNG in breaching their fiduciary duties to ASPR and Naranjito.[7] Doc. 80 at 65. The elements of that claim are that (1) a fiduciary relationship exists, (2) the third party knew of the fiduciary relationship, and (3) the third party was aware that it was participating in the breach of that fiduciary relationship. <u>Meadows v. Hartford Life Ins. Co.</u>, 492 F.3d 634, 639 (5th Cir. 2007)(citing <u>Kinzback Tool Co. v. Corbett-Wallace Corp.</u>, 160 S.W.2d 509, 514 (Tex. 1942)). As with the conspiracy claims, plaintiffs rely on conclusory allegations without specific facts to support them. Plaintiffs admit that Rivera signed the document that authorized the BB&T loan, although they argue that he did not do so knowingly. They do not allege any facts to show that BB&T was aware of this contention until after the sale of Naranjito had been negotiated and authorized. Even then, they acknowledge that enough money was escrowed to cover ASPR's 40% share of the proceeds of sale. In sum, Rivera authorized the BB&T loan and authorized the Sankars and SNG to manage Naranjito. That BB&T was the lender and provided banking

---

[7]Although Naranjito continues to be mentioned in Count Fifteen of the second amended complaint, plaintiffs' response to the motion to dismiss makes plain that the aiding and abetting of breach of fiduciary duty is alleged only on behalf of ASPR. Doc. 87 at 14 ("ASPR['s] claim for BB&T's Aiding and Abetting Breach of Fiduciary Duty should stand.").

services is not sufficient to support a claim of aiding and abetting.

In Count Thirteen, ASPR asserts a claim for conversion against BB&T. Doc. 80 at 63. As discussed, supra, ASPR has not pleaded facts to support a conversion claim. Money can be subject to a conversion claim "only if it can be identified as a specific chattel," that is, the plaintiff must be able to trace the exact funds. Ellis v. Wells Fargo Bank, N.A., No. CV G-13-249, 2014 WL 12596473, at *5 (S.D. Tex. Feb. 10, 2014); Taylor Pipeline Constr., Inc. v. Directional Road Boring, Inc., 438 F. Supp. 2d 696, 708 (E.D. Tex. 2006). No facts are pleaded to support such contention here.

Finally, B&T argues that plaintiffs cannot proceed on the claim for unjust enrichment. Unjust enrichment sounds in quasi-contract or contract implied in law. Baxter v. PNC Bank, N.A., 541 F. App'x 395, 397-98 (5th Cir. 2013). A party cannot recover on such a theory where the subject matter is covered by an express contract, even where the parties to the lawsuit are not in privity. System One Holdings, LLC v. Campbell, No. B:18-cv-54, 2018 WL 4290459, at *4 (S.D. Tex. Aug. 21, 2018). Here, the BB&T loan and banking relationship with Naranjito is governed by contract. And, the relationship between the members of Naranjito is governed by other contracts. In any event, ASPR has failed to

explain how BB&T would have been unjustly enriched by repayment of a loan it made and banking services it provided.

V.

Order

The court ORDERS that the motion of the SNG defendants be, and is hereby, granted in part and the claims for breach of the Member Sale Agreement (Count Three), breach of fiduciary duty asserted by Rivera (Count Four), breach of MSA (Count Five), violation of RICO § 1962(a) (Count Six), RICO conspiracy (Count Nine), unjust enrichment (Count Ten), fraud (Count Eleven), civil conspiracy (Count Twelve), and conversion (Count Thirteen) be, and are hereby, dismissed with prejudice.

The court further ORDERS that the Sankars' motion to dismiss be, and is hereby, granted in part and the claims against the Sankars for breach of the Operating Agreement (Count Two), breach of fiduciary duty asserted by Rivera (Count Four), violation of RICO § 1962(a) (Count Six), RICO conspiracy (Count Nine), fraud (Count Eleven), and conspiracy (Count Twelve) be, and are hereby, dismissed with prejudice.

The court further ORDERS that BB&T's motion to dismiss be, and is hereby, granted; that ASPR take nothing on its claims against BB&T; and that such claims be, and are hereby, dismissed with prejudice.

The court further ORDERS that all claims asserted by Rivera and all claims asserted on behalf of Naranjito be, and are hereby, dismissed with prejudice.

The court determines that there is no just reason for delay in, and hereby directs, entry of final judgment as to (1) the dismissal of the claims against BB&T, (2) the dismissal of all claims asserted on behalf of Naranjito, and (3) the dismissal of all claims asserted by Rivera.

SIGNED September 3, 2019.

JOHN McBRYDE
United States District Judge